CHAMBERS, &c.
vs.
DAVIS, &c.

---

Case 9.

ORD. PET.

## Chambers and Wife vs. Davis, &c.

APPEAL FROM MADISON CIRCUIT.

1. The statute of Kentucky of 1796, (1 *Stat. Law*, 744,) is in substance the same as the statute of William and Mary against fraudulent devises, and makes the heir liable for the debts of the ancestor to the extent of the value of the lands he receives by descent, and makes the devisee liable in the same manner as the heir-at-law.

2. But at common law the heir was only liable for the estate descended—he was not liable for the profits derived from it during the time he had it in possession. nor did the statute of William and Mary make him liable for profits received. (*Bacon's Ab.* 3, *Title Heir and Ancestor, p.* 463.) Nor did our statute of 1796  And as it only makes the devisee liable in the same manner as the heir-at law, a devisee for life is not responsible for the profits of land devised during the time it is held.

3. A devisee of land takes an absolute estate in the land devised, though the ancestor owes debts—not an equitable estate, subject

to the debts. The creditor of the devisor, or ancestor of the heir, has no lien on the land devised or descended.

4. By the Revised Statutes (*p.* 364,) the heir or devisee is made liable where the estate has been aliened before suit brought to recover the debt of the ancestor or devisor, not only for the value of the land, but for interest thereon from the time of alienation. This case does fall under the provisions of the Revised Statutes.

5. An estate in remainder after the termination of a life estate, is not subject to sale under execution, to pay the debts of a testator during the pendency of a suit to subject it to that purpose.

[The facts of the case appear in the 15th volume of B. Monroe's Reports, page 522, and in the opinion of the court in this case.—REP.]

*S. Turner* for appellants—

Upon the return of this case from this court, it ordered an estimate to be made of all the personal estate, including that which the law secured to the widow free of the debts of her husband, as well as that not exempted; and further ordered that the value of the widow's life estate in the land should also be estimated and made liable for the debts, when by the decision of this court the life estate was not declared to be liable. An amended petition was filed, making the creditors of the testator, Nelson, parties defendants, and praying for a sale and *pro rata* payment of debts.

In February, 1855, an execution was issued in favor of Mary Davis and others, the devisees in remainder, under the will of Nelson, for $71 75, and levied on the 172 acres of land, and it was sold, and purchased by Green Broadus. The land was duly valued, was not redeemed, and the time for redemption had passed before the final judgment in this case was rendered; and these facts are set out in an amended petition, filed in March, 1856; and the liability of Mrs. Chambers for rents and hire is contested, as well as the liability of Mrs. Chamber's life estate for the payment of debts.

The commissioner made his report at March term, 1856, in which he reports that Chambers is in ad-

CHAMBERS, &c.
vs.
DAVIS, &c.

vance to the estate $850 03 beyond assets received. To reach this result he charges $400 for rent of Mrs. Chambers' land, as assets, and $365 for personal estate received as assets, which was devised to her, and most of which is exempted by law from the payment of debts, and belong to the widow as such. He further reports outstanding debts amounting to $2,126 54, against Nelson's estate.

The appellants excepted to the commissioner's report, because they were charged with rent upon the land, and other items not properly chargeable to them. The court overruled the exceptions, and confirmed it, and rendered a final decree, in which no provision is made for reimbursing Chambers and wife for $850 03, in which they were found to be in advance for the estate, or for the costs of this suit. It directs that so much of the life estate of the widow, in the land, and so much of her term in the slaves, and so much of the remainder in the land, after the termination of the life estate, in equal proportions, as will pay $2,126 54, with interest from the 13th March, 1856, be sold, &c.; the court being of opinion that the estate in remainder in the land was liable, notwithstanding it had been sold under execution, and that such sale was no obstruction to a sale under this decree.

The appellants object to this decree on the following grounds:

1. The judgment is supposed to be final, as it was rendered upon the merits and purports to be final, disposing of all the claims to relief set up by appellants; and it surely is erroneous in failing to make any provision for the payment of the $850 03, advanced for the estate beyond assets received, with interest and costs. It cannot be said that this may be done hereafter. It is not a correct practice to sell property by piece meal, nor is it correct to withhold from Chambers and wife that which is due to them for money paid out, whilst other creditors are being satisfied their claims; and none can say that

the slaves may not die, be run off, or not liable to further sale, and the amount due to Chambers and wife finally lost. Hence they are interested in having such a sale as will raise the whole fund at once. Besides, this is a suit to distribute the estate, which the decree does not do.

2. The court should not have set aside the sale under Chambers' execution, of the estate in remainder in the land, which is done in effect by 'the decree in this case, by ordering a sale of the same interest for the outstanding debts of Nelson. Before such a sale, Broadus, the purchaser under the execution sale, should have been a party and heard in defense of his rights. Chambers, however, is interested in the sale, as he is accountable to Broadus for the amount of execution and sheriff commissions, in case the sale is held to be invalid. The validity of the sale is directly involved in this suit.

3. The circuit court erred in decreeing a sale of the life estate of Mrs. Chambers in the land; the mandate of this court does not so direct. That part of the opinion bearing on that question, after directing an account of the personal estate and hire of the slave Ned, to be taken and charged to Chambers, as executor, proceeds: " The estate in the slaves devised by the testator to his wife, and the estate in remainder in the land, will have to be valued, and each of them will have to contribute proportionably to the payment of the balance of the debt that may be due, after crediting thereon the personal estate and hire aforesaid." This paragraph concludes the parties from insisting on a sale of the life estate of Mrs. Chambers in the land, for the payment of Nelson's debts, and it was not an open question for adjudication in the circuit court. If, however, this court should differ with counsel on this point, then it is insisted that the life estate of the widow in the land, which she holds under the will, should not abate proportionably to legacies to strangers, nor should it be liable at all, until other bequests and legacies are

exhausted. This is the doctrine laid down in *Ward on Legacies, title Abatement and Refunding, page* 374. " A bequest to a wife in lieu or satisfaction of dower or thirds, is considered a purchase, therefore not liable to abate." Same book and page : " That if the legacies were given to children and strangers, and there was a defect of assets, that the children should not abate in proportion, but the loss should fall upon the strangers, for children unprovided for may be considered. in some respects, as creditors." It is respectfully insisted that this doctrine applies with peculiar propriety to this case, and makes it the duty of the court in this case, in decreeing against legacies and bequests, to discriminate, and exempt the part devised to the widow, which was manifestly in lieu of dower and thirds, until all the other estate devised is exhausted. Nelson devised his whole estate, and consequently the devises to her must have been in lieu of dower and thirds, and where it does not exceed the dower, it cannot be regarded as fraudulent as to creditors.

4. The circuit court erred in not discriminating between that portion of the personal estate which was liable for debts and that which was not. Under the statute of 1842, (3 *Stat. Law,* 236,) which statute, after describing the property which shall be exempted, declares, "said property shall not be considered as assets in the hands of the executor or administrator, but shall be reserved to the widow of the decedent, and her infant children, if any." It is insisted that it was necessary to put Mrs. Chambers to her election, to hold under or against the will, to enable her to hold the property, as *it is in no event assets* in the hands of the executor, or liable for debts in the life time of the testator, or after his death.

5. The next question is as to the liability of Chambers and wife, for the profits of the land and negroes during the time they have been held under the will of Nelson. It is denied that they are liable. By the common law, lands which descended or were de-

vised, were not liable to creditors, except in the former case, where the debt was due by specialty; the heir was expressly bound. The *Statute* 3 *and* 4, *William and Mary*, against fraudulent devises and alienations by heirs, made the estate in the hands of the devisee, or its value if aliened, liable to certain debts of the testator. (*See* 3 *Bacon, Ab., title Heirs and Ancestor, letter F., pages* 26 *to* 28.) And our statute, (1 *Stat. Law*, 742.) is a substantial copy of the act aforesaid. (1 *Marshall*, 387.) There are some other statutes making lands devised or their value liable for simple contract debts, but none of these statutes making the profits of an estate, during the time it is held by the devisee, liable for the debts of the testator. The 5th section of the act of 1796 makes the heir liable for the value of the *lands, tenements, or hereditaments descended*, and the 6th section makes the devisee liable and chargeable in the same manner as the heir-at-law, and in each case, if the lands descended or devised have not been alienated, such estates, and not the profits or rents during the period it has been held by the heir or devisee, is made liable to the creditors of the testator or intestate.

In 3 *Bacon's Ab*, 25, it is said by the English authorities, "that the body of the heir is protected. as it would be unreasonable to hold him bound beyond the amount of assets descended." Again, at page 28, it is said by the author, " it seems that neither before nor since this statute, the executor or administrator of the heir is liable for the person, if the heir is not chargeable. But with respect to the land, and if before the statute the heir had aliened before action brought, he should not be charged with profits received, which is evident from the plea of *riens per descent* the day of the writ purchased, much less could his executor; nor can he yet be held liable unless he is made so by some statute. The liabilities of the heir under the statute against fraudulent conveyances is the same as under the statute against fraudulent devises. In the case of *Cox vs. Strode*, 2 *Bibb*,

203, it was held that "the liability of the heir was the amount or value of the estate to him descended." It follows that he is not liable for profits. This doctrine applied to this case, shows the decree to be erroneous, in charging Chambers and wife with the $400 for rents.

The decree is erroneous in failing to decree to Chambers and wife their costs, legal and extraordinary.

No brief on file for appellees.

December 17.    Judge SIMPSON delivered the opinion of the court:

This case has been heretofore before this court, and the opinion then rendered is referred to for a general statement of the facts. It is reported in 15th B. Monroe, page 522.

On the return of the cause to the circuit court, an estimate was made of the rents of the land during the time it had been in the possession of the devisee for life, and the amount, which was ascertained to be four hundred dollars, was decided to be assets in the hands of the executor, and he was charged therewith in his executorial account.

The correctness of this decision is now presented for our consideration.

By the common law, the lands which descended to the heir were only liable for the specialty debts of the ancestor in which he expressly bound himself and his heirs. And if the heir, before an action brought against him, had sold and conveyed the lands, the obligee was without any remedy.

To correct this evil, and to prevent the wrong and injury done to the creditors by alienation of the lands descended, a statute was passed in the reign of William and Mary, by which it was enacted that the heir should be answerable for the *value* of the *lands* descended to him, and which he had sold and alienated before an action had been brought against him.

Before the passage of this statute, if the ancestor had devised his lands away, a creditor had no remedy against the devisee. But to prevent this injustice to creditors, it was enacted by this statute, that all devises of lands, except for the payment of debts, or other liabilities of the testator therein enumerated, founded on a valuable consideration, should be deemed, as to creditors, to be fraudulent and utterly void, and of none effect. It was also enacted by it, that every devisee made liable by its provisions, should be liable and chargable in the same manner as the heir-at-law, notwithstanding the land devised should be aliened by him before the action was brought.

Our statute of 1796 on the subject of fraudulent devises, (1 *Statute Law*, 742,) is a substantial copy of the one above referred to, and makes the heir liable for the debts of the ancestor to the extent of the value of the lands he acquires by descent, and declares that the devisee shall be liable and chargable in the same manner as the heir-at-law.

Other statutes have made the heir and devisee liable to the extent of the value of the estate descended or devised, for all the debts of the ancestor or testator, whether they be simple contract or specialty debts.

But the liability of the heir by the common law, was only for the value of the estate descended; he was not liable for the profits he derived from it during the time he had it in possession, nor did the foregoing statute of William and Mary make him responsible beyond the value of the land itself. (*Bacon's Abridgement, 3d vol., title Heir and Ancestor, page* 463.)

As, then, the statute only makes the devisee liable and chargable in the same manner as the heir-at-law, it would seem to follow that the devisee for life should not, in this case, be made liable for the profits of the land during the time she had the possession of it.

1. The statute of Kentucky of 1796, (1 *Statute Law*, 744,) is in substance the same as the statute of William & Mary against fraudulent devises, and makes the heir liable for the debts of the ancestor to the extent of the value of the lands he receives by descent, & makes the devisee liable in the same manner as the heir-at-law.

2. But at common law the heir was only liable for the estate descended —he was not liable for the profits derived from it during the time he had it in possession, nor did the statute of William and Mary make him liable for profits received. (*Bacon's Ab. 3, Title Heir and Ancestor, p.* 463.)

CHAMBERS, &c.
vs.
DAVIS, &c.

Nor did our statute of 1796 — And as it only makes the devisee liable in the same manner as the heir at law, a devisee for life is not responsible for the profits of land devised during the time it is held.

3. A devisee of land takes an absolute estate in the land devised, though the ancestor owes debts—not an equitable estate, subject to the debts The creditor of the devisor, or ancestor of the heir, has no lien on the land devised or descended.

4. By the Revised Statutes (page 364,) the heir or devisee is made liable where the estate has been aliened before suit brought to recover the debt of the ancestor or devisor, not only for the value of the land, but for interest thereon from the time of alienation. This case does fall under the provisions of the Revised Statutes.

5. An estate in remainder after the termination of a life estate, is not subject to sale

It might seem just and equitable to subject to the payment of the ancestor's debts, not only the estate descended to the heir, but also the profits he had derived from it. The doctrine, however, is, that he takes an absolute title to the land, subject to be charged with the debts; but the creditors have no lien upon it, and he is only liable for its value. (*Wilson vs. Wilson*, 13 *Barbour's Rep.* 252; 4 *Kent's Commentaries*, 420.)

The only liability on the devisee, is that which the statute imposes, and as it is only for the value of the estate devised, she is not liable for the profits during the time she has had the possession of the land. Consequently, the charge of four hundred dollars on that account, against the executor, was unauthorized and erroneous.

The liability of an heir, or of a devisee, where the estate descended or devised has been alienated before suit brought, is enlarged by the Revised Statutes, and he is made liable not only for the value of such estate, but also for legal interest thereon from the time of alienation. (*Revised Statutes, page* 364.) Whether, according to the spirit of this act, the liability should be the same where there is no alienation of the estate, and the rents and profits should be substituted in that state of case in place of the interest with which he would be chargable if an alienation were made, is a question we need not now decide, as this case has to be governed, not by the Revised Statutes, but by the pre-existing law.

The estate in remainder could not be subjected to sale, for the payment of the debts of the devisees, during the pendency of this action, which was brought for the express purpose of subjecting it to the payment of the debts of the testator, so as to invest the purchaser with a valid title, but he would take it subject to the judgment in this case, being a *pendente lite* purchaser. The decision of the court below, therefore, that the sale and purchase under execution which was set up and relied upon, did not

constitute any obstruction to a sale of the land in this action, was obviously correct.

It does not appear whether any of the articles of property which by the act of 1843 (*Session Acts*, 1842 –3, *page* 236,) were declared not to be assets in the hands of the executor, were charged against him in the settlement made out and reported by the commissioner in the circuit court, nor whether any such articles were received by the widow under the bequest to her, or were sold by the executor at the sale of the personal estate made by him. We cannot, therefore, decide that the executor was made liable for the value of any property which did not constitute assets in his hands for the payment of debts. But as the judgment has to be reversed on account of the charge for rents, this matter may be inquired into on the return of the cause to the court below.

As the cause is still pending in the circuit court, the court has power to give the plaintiffs a judgment for their costs, and also to order a sale of so much of the estate as would pay the executor the balance due to him. But still, as the amount for which the estate might sell was uncertain. we think that it should have been sold for the payment of the whole debt for which it was liable.

The other questions which have been made were virtually decided when the case was formerly before this court.

Wherefore, the judgment is reversed, and cause remanded for further proceedings and judgment in conformity with this opinion.

CHAMBERS, &c.
vs.
DAVIS, &c.

under execution, to pay the debts of a testator during the pendency of a suit to subject it to that purpose.